# IN THE COURT OF APPEALS OF IOWA

No. 16-1150
Filed July 19, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID DWIGHT JACKSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P.
McLellan, Judge.

        David Dwight Jackson appeals some of his convictions, alleging the State
submitted insufficient evidence. **AFFIRMED.**

        Christopher J. Foster of Foster Law Office, Iowa City, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant
Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

In 2016, David Dwight Jackson was charged with five counts: (1) possession of a controlled substance (methamphetamine) with intent to deliver, (2) possession of a controlled substance (cocaine base) with intent to deliver, (3) failure to possess a tax stamp, (4) possession of a controlled substance (heroin) second offense, and (5) possession of a controlled substance (marijuana) second offense. Each of these charges was subject to an habitual-offender enhancement. Following a jury trial, Jackson was found guilty of lesser-included charges on the first (methamphetamine) and second (cocaine base) counts, guilty of the third (tax stamp) and fifth (marijuana) counts, and not guilty of the fourth (heroin) count. Jackson appeals claiming the State submitted insufficient evidence to support his conviction for possession of the cocaine base, possession of the marijuana, and failure to possess a tax stamp for the methamphetamine.

"A jury verdict is binding upon an appellate court if it is supported by substantial evidence." *State v. Garr*, 461 N.W.2d 171, 173 (Iowa 1990). "Substantial evidence is evidence that could convince a rational factfinder that a defendant is guilty beyond a reasonable doubt." *Id.* "Direct and circumstantial evidence are equally probative." *Id.* "We review challenges to the sufficiency of the evidence for the correction of errors at law." *State v. Lambert*, 612 N.W.2d 810, 813 (Iowa 2000).

When viewing the evidence in the light most favorable to the State, the testimony at trial established the following. *See Garr*, 461 N.W.2d at 173 ("[W]e view the evidence in the light most favorable to the State, 'including all legitimate

inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record.'" (citation omitted)). In February 2016, police officers executed a search warrant on an apartment in Des Moines. When they knocked on the door and no one responded, the officers forcibly entered and found two persons in the apartment. They first found a female located in the living room, whom one officer had seen entering the apartment shortly before the officers made their entry. The officers forcibly entered the only bathroom in the apartment and found Jackson sitting clothed on the toilet, with the toilet seat open and the toilet water running as if recently flushed, which one officer testified led him to believe Jackson had been using it to dispose of evidence. The officers then searched Jackson's person and found a plastic bag with 6.97 grams of methamphetamine and three hundred and three dollars in cash.

The officers then searched the apartment's bedroom, finding three bags containing a total of 1.07 grams of methamphetamine, with one containing .83 grams, another .24 grams, and the third methamphetamine residue. The officers also found eight cellular phones, a box of sandwich bags, a digital scale, a pill grinder, a total of 5.99 grams of marijuana, and .25 grams of heroin found in a shoe under the bed. On top of a dresser in the bedroom, the officers found a prescription pill bottle with Jackson's name on the label. The officers further found men's and women's clothing in the bedroom. In the living room, the officers found approximately 1.33 grams of cocaine base, a small amount of methamphetamine, drug pipes, a small marijuana joint, a blunt, some rolling papers for marijuana, a digital scale, and a cell phone belonging to the female occupant. They also found men's clothing in the living room closet.

An officer also testified to his interview of Jackson.[1] The officer said Jackson admitted to selling crack cocaine and methamphetamine—and selling it to support his own use—but denied selling heroin. The officer further testified Jackson used certain drug-specific terminology, such as referring to certain drugs as "pieces," which the officer testified "is generally exclusive to crack cocaine," and discussed the price and weight at which he sold methamphetamine—for instance, that he sold a quarter gram of methamphetamine for twenty-five dollars and a gram of methamphetamine for one hundred dollars. Finally, the officer testified Jackson admitted he had resided in the apartment for the last two months. It is undisputed there was no drug tax stamp on the contraband.

On appeal, Jackson claims "aside from the 6.97 grams of methamphetamine found on Jackson's person, the State submitted insufficient evidence to prove that he possessed any of the other contraband found in the apartment." "Possession may be actual or constructive." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (footnote omitted). Here, apart from the 6.97 grams of methamphetamine, the State relies upon a theory of constructive possession. "Constructive possession exists when the evidence shows the defendant 'has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'" *Id.* (quoting *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008)). When drugs are found in a person's exclusive possession, constructive possession may be inferred. *Id.* When, as here, "the premises are jointly occupied, additional proof is needed." *Id.*

---

[1] A recording of the interview was provided but is difficult to hear.

There are several factors our court considers to determine whether a defendant has possession of items when those items are discovered in a jointly occupied place:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstance linking the person to the controlled substance.

*Id.* (quoting *State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013)).

Here, testimony was provided that Jackson admitted to selling crack cocaine and knew certain terminology used exclusively in reference to crack cocaine. There was also testimony Jackson admitted to selling methamphetamine in amounts generally consistent with those found in bags in the bedroom of the apartment. An officer testified Jackson admitted he was residing in the apartment.[2] The police found, among other items, methamphetamine and marijuana in the only bedroom of the house where they also found a prescription pill bottle with Jackson's name on the label. There were also additional items confirming Jackson resided in the apartment—such as the men's clothing found in the bedroom and the living room closet. Further, Jackson locked himself in a bathroom when the police arrived and was found dressed sitting on top of a toilet that had been flushed, which an officer testified indicated Jackson may have been disposing of evidence. This conclusion by the officers is supported by an admission Jackson made during a phone call while in

---

[2] There was no indication any other party was residing in the apartment. An officer testified Jackson had told the officer "[h]is baby mama, as he described her, . . . had initially rented the apartment. As [Jackson] described, she had moved out, and he paid $500 rent for the residence."

jail, in which he stated he "got in the bathroom and dropped [an item] in the toilet and flushed it [but] forgot one . . . bag . . . that was underneath [his] wallet." The female occupant, who had been in the apartment for less than twenty minutes based upon pre-entry surveillance, made no comparable incriminating movements. *See State v. Thomas*, 847 N.W.2d 438, 443 (Iowa 2014) (noting two other occupants had not "offered any resistance or acted inappropriately in their dealing with the officers"); *State v. Henderson*, 696 N.W.2d 5, 9 (Iowa 2005) (noting one party's acts implied guilty where the other's did not). We conclude there was sufficient evidence from which a factfinder could conclude Jackson was in constructive possession of marijuana and cocaine base. *See generally Reed*, 875 N.W.2d at 707-08 (discussing and contrasting cases addressing constructive possession while finding the defendant was in constructive possession of drugs). Further, we find there is sufficient evidence to support Jackson was in constructive possession of more than seven grams of methamphetamine, when taking into account the amounts found on Jackson's person (6.97 grams) and in the bedroom (1.07 grams), and thus affirm his conviction for failure to possess a tax stamp. *See* Iowa Code §§ 453B.3 (2016) ("A dealer shall not possess, distribute, or offer to sell a taxable substance unless the tax imposed under this chapter has been paid as evidenced by a stamp, label, or other official indicia permanently affixed to the taxable substance."); 453B.12 (imposing civil and criminal penalties on persons who violate chapter 453B); *see also* Iowa Code § 453B.1 (defining a "[d]ealer" as "any person who ships, transports, or imports into this state or acquires, purchases, possesses, manufactures, or produces in this state" items including "[s]even or more grams

of a taxable substance other than marijuana, but including a taxable substance that is a mixture of marijuana and other taxable substances").

**AFFIRMED.**